Given the circumstances here, I think what we'll do is start with the government, and then Mr. Kanari will allow you the opportunity to respond. Ms. Burns, are you familiar with the ABA standards for the prosecution function, Standard 3-1.2? I am not, Your Honor. It specifies something that I always found very interesting and important to keep in mind when I was at the U.S. Attorney's Office. That is that the prosecutor is an administrator of justice, not simply an advocate, and should exercise sound discretion and independent judgment in the performance of that prosecutorial function. We've asked the parties to come back here today because we have before us, from the submissions of the government and Petitioner here, the government's position in a case involving siblings who appear to be identically situated in terms of their family background and basis for seeking asylum. And the government in that case taking the position that it was one of the few cases that came across as very well documented with objective evidence of the claim, affidavits, consistencies throughout, a very strong asylum case, and one where the government seems to actually have supported, not just acquiesced, but supported the sister's application which was granted. And the government, in response to our request here to better understand the government's position, responded pointing to a conspicuous absence of any supporting documentation in this case, as well as the family PSG being raised later in the context of the case. But of course, the Justice Department is the Justice Department, so all of that record was and is available to the government. In light of that, and given the mandate to be an administrator of justice and not to be giving preferential treatment to one of similarly situated parties, can you address why it is that the government is taking a diametrically opposite position in this case than it did for this petitioner's siblings? Your Honor, I think it's important to start at what the court here is looking at. We're not looking at DHS's prosecutorial discretion decisions in this case or another case. Those decisions are not reviewable. What the court looks at is the immigration judge's decision and the Board of Immigration Appeals' decision, and the issues that were raised before it and the record that was before it. Although the underlying facts might be the same, there are qualitative and quantitative differences between the petitioner's case that he presented to the agency and the case that his sisters presented. Now, I am precluded from talking about the specifics of the sisters' case by regulation, which prohibits disclosure of another applicant's asylum case. But in the language quoted by this court in the supplemental briefing order, and as you just pointed out, the sisters' case was a rare, well-documented case. I have looked at the record in the sisters' case, and while I can't reveal what is in that record, I can say that it is qualitatively and quantitatively different than what petitioner presented in this case. Petitioner only had his own personal affidavit. He did not have well-documented country condition reports. He did not submit any affidavits from family members, despite that he was living with three of his sisters and his stepmother, and that his sisters were preparing for their own asylum cases. The immigration judge, at least three separate times, asked him if he was going to submit evidence from his sisters or his mother, and whether they would testify on his behalf. So it shouldn't have come as a surprise to him that there would be some evidence required to meet his burden of proof. In addition, in the sisters' case, in the language quoted by this court, DHS counsel reiterated that there were no credibility concerns, whereas in this case, the immigration judge raised significant credibility concerns, despite finding petitioner credible. For example, in his written asylum application, petitioner identified two completely different people as his sisters, and didn't list the sisters upon now who he's relying in his asylum application. But the most significant difference is that despite being asked multiple times by the immigration judge, petitioner never raised a family-based social group claim. The IJ asked him at least two master calendar hearings, and twice at the merits hearing. He did not raise that claim. Then, in an abundance of caution, the immigration judge, in self-proclaimed dicta, opined on, perhaps, the viability of such a claim, and found that it appeared it would lack on nexus. Petitioner, on appeal to the board, had the exact same attorney as his sisters. And despite that, petitioner never picked up this family-based social group claim and brought it to the board and said, hey, this is my claim. I'm going to be persecuted because of my relationship to my father. Weren't the sisters represented by a clinic in Baltimore? The University of Maryland, a Baltimore clinic? Yes, Your Honor. And they entered an appearance here. But my understanding is that it was a very short appearance and that there was other counsel involved representing the petitioner before us. Yes. So he had one attorney before the immigration judge. The attorneys at the University of Baltimore legal clinic represented him before the board. I believe they entered their appearance. There's a motion, I think, for an extension of time to file. They entered their appearance not long after he submitted the appeal. But then they said they were unable to reach him, petitioner, and so they didn't file their brief until, I believe, right at the due date. Or they need an extension to file their brief because the motion, I believe, says that they were unable to reach petitioner. I'm sorry. Sorry. Go ahead. I thought you were done. But after he filed his appeal brief with the board, the case still, I believe he filed his brief. The notice of appeal was filed in May 2019. The appeal brief was filed in January 2021. His sisters were granted asylum in February 2021, a month later. The board didn't issue its decision for a year later. He most certainly, being represented by the same people as his sisters, could have filed a supplemental brief, a motion of remand, some indication that if he thought that his sisters' grant of asylum was so integral to his own application, he could have filed a motion of remand with the board. He never did so. He never even brought it up in his opening brief to this court or in his reply brief. The first that we ever learned about his sisters' grant of asylum was that oral argument in November 2022. Yes, well, we were all there, and that was quite a surprising moment. All you say, Ms. Burns, reflects this record. But as the government is well aware, and we see too often, counsel in the course of representations before the IJ and BIA often is lacking too often in the record that it puts forward. Even to the point in one case, I can recall of counsel failing to substitute the names of prior clients in the brief submitted. There's a difference between what the government can do and what it should do, which is why I started with the ABA standards and the issue of the government's exercise of discretion here. Has this disparity in the outcomes of the petition for the petitioner here versus his sisters, to what level within your department has this been discussed? It hasn't. I mean, it hasn't been discussed. Before I was counsel in this case, there was a mediation, but what the parties wanted were different or more than what the government could agree to. I know that what happens in mediation is privileged and confidential. I can't reveal that. But from my understanding, there was a pretty wide valley to try to bridge to come to any sort of equitable agreement. But to the extent that the court believes there's an inequity here, there is a well-established procedure for such an equity. It's a motion to reopen with the board. This case has been, I mean, the board's decision was a year and a half ago. He's never filed a motion to reopen claiming ineffective assistance of counsel or to present any of this evidence about his sisters. And so for the court of appeals to give him an entire second chance to come up with a new case and get a redo is just not how appellate litigation and administrative exhaustion works. And I understand that the court is concerned about the equity. But if there is any inequity, he has a remedy. He can file a motion to reopen with the Board of Immigration Appeals and he's chosen not to. And as recently as yesterday, I checked to see if that motion had been filed and nothing has been filed yet. In fact, I believe your honor suggested that as a remedy for him back in November when we first discussed this case. So between the options of moving forward and ruling in the government's favor, in which case the government is almost certainly inviting a motion to reopen and cause, including ineffective assistance of counsel for failure to develop this record and raise a PSG of the family circumstances earlier or returning to mediation. And are you telling us that the government would prefer the court to simply move forward and the government would prefer to continue litigation in the immigration courts? Yes. I mean, yes, your honor. I think that I don't know what kind of precedent it would it would set to say that somebody who had a full and fair hearing before an immigration judge and present and was represented by counsel throughout gets a second chance to redo his entire claim because he thinks that he has a better theory once the case gets to the court of appeals. It's just not a good use of resources and it is. Is it a good use of the question? Is it a good use of resources for the government to be going back to the drawing board in terms of a motion to reopen and further litigation? Or given the the administrative record that is now known to the government and the documentation that is available to the government, whether further efforts at mediation would be worthwhile here? Even I'm not sure what remedy the court is suggesting. I mean, the court can't grant asylum. I can't grant asylum. The case would still need to go back for further fact finding and litigation, even if the court were to land. The documents upon which you are referring to that are in the sister's case aren't in this record. Petitioner would need to put forth some evidence showing that he could sustain a burden of proof. And I think the other really key thing to point out is that the sister's case arises in the Fourth Circuit. We're in the Third Circuit. I understand that you think it's it's it's unjust, but this court's case law and almost I think almost every other circuit that's considered the Fourth Circuit's approach to nexus has recognized that it is far more lenient and it doesn't comport with statute and in the case law that to show a nexus. In the Fourth Circuit, you only need to show but for causation and almost I believe every other circuit you need to show but for causation and that the protected ground is a central reason. And so that's another reason. This is a case that arose with different evidence, different facts, different claims in a different jurisdiction. And DHS's decision to exercise prosecutorial discretion in the sister's case has no bearing on this case. And it just it isn't just because one sibling gets prosecutorial discretion or some sort of discretion doesn't mean that the entire family necessarily is entitled to that. If the facts are essentially the same and that the sisters relied on a particular social group that was consented to by the government, that is the family members of Jose Velasquez, the father, then it would seem that that would be the proper particular social group. I realize that on three or four occasions the IJ here suggested that that might be and counsel didn't follow and perhaps there's an ineffective assistance of counsel claim here. Let me just back up just in terms of getting some facts. Were you involved in the proceedings before the IJ and BIA at all? No, that's Department of Homeland Security. OK, that's what I thought. And the. Did the counsel here at the DOJ or Homeland Security know in this case that there were two similar cases, albeit in another jurisdiction? You know, I'm not sure what they knew, but petitioner was asked about family members in the United States and at his merits hearing. And I believe that when he was asked about his sister, she said, I don't he didn't even know if they were in removal proceeding. He didn't know what applications they had filed for relief despite living with them and then preparing for the application. So, no, I don't think that the the ICE attorney that was handling the case was aware. I don't think the immigration judge was aware. I don't think the Board of Immigration Appeals was aware. But that's, again, petitioners failing, not the government. Understood. What we're talking about today is not the procedural thing so much that you're talking about. We're trying to figure out how it is that the left hand can consent to something and the right hand does either doesn't know about it or doesn't agree with it. And in another jurisdiction opposes it. And I'm not throwing any stones at the government because I don't know what ICE was doing in connection or how it handled the cases. They probably have so many. But having seen what happens with the family members in the same circumstances, family members of Jose Velasquez, why there is such a reliance on procedure and not on substance that this one just cries out, just pure fairness, okay, I don't know what happened to me. We're not told about it and we don't need to be told about it this time. But I come back to the question that Judge Krause asked you. Would further mediation in this case possibly be a benefit in reaching some type of accord to go forward? I don't believe so. And I actually wonder what remedy the court thinks is appropriate at this stage. Short of a merits-based remand for a claim that was never raised. I mean, I don't know what other remedies. It could be as easy as the government agreeing that there would be a remand for a representation of the case of Mr. Velasquez-Contreras and let it go from there, for example. So he would just get a brand new hearing, start from scratch, be able to redo everything despite being in proceedings since 2010? Procedurally, procedurally, that's right. But substantively, what's your problem with that? Forget the procedure for the moment. Again, we are in a different jurisdiction. But substantively, what's your problem with that? We all realize it's one of those Baltimore ones up here. But what is substantively the concern? Essentially, what we're talking about is a fairness concern that maybe there's other ways to attack it. But I'm asking you from a personal perspective, what is the concern that you have substantively? Substantively, I think it sets a bad precedent that somebody gets to litigate their case for six years and then change their theory and get a whole new bite at the apple and a redo because they think that they should have done it differently. And if that really is what they believe, there is already a procedure in place for doing that. It's a motion to reopen with the board. If a motion to reopen to the board was filed, would the government oppose it? A motion to reopen would be in conjunction with the Department of Homeland Security, not DOJ, and we are not permitted to weigh in on how DHS should exercise its discretion with that. Do you have any input as to what the government should do in that case? You're the counsel of record right now. Yes, I do not get to tell DHS how to deal with a motion to reopen. That is up to them. I essentially am defending what the IJ and the board do. I don't weigh in on DHS's prosecutorial discretion decisions, so that's not a place for me to tell them what to do. But I think another thing, a point that needs clarification, is this court keeps pointing, or says the government supported the sister's application, and that's not what happened. They agreed to a proffer of asylum eligibility. They consented to it, I think is the word I used, or at least I meant to use. They didn't oppose it. They didn't oppose, but a proffer of asylum eligibility is almost like an Alfred plea in reverse. It means that based on the evidence before DHS, the facts, the case law, and the DHS's prosecutorial resources, that this is just not a case that they're going to fight. And so it's like, well, we were going to say, based on the evidence before us, there's no credibility concerns, it's well documented, there's lots of affidavits and country condition reports. We're going to say that you most likely would have a strong case for asylum, so therefore we're going to not oppose. It's essentially a non-opposition versus an affirmative support. And that is a prosecutorial discretion decision that is immune from judicial review. And I understand that you think it's unfair, but just as one person, two defendants, criminal defendants engaged in the same behavior, both being prosecuted for the same crime, one gets offered a plea deal and the other doesn't. That might seem unfair, but there's nothing untoward that's occurring there.  His sisters were offered a type of prosecutorial discretion that Petitioner wasn't offered. And the reasons that they were offered that are likely because their claims were well documented and they actually presented a family-based social group claim. I understand that you think that Petitioner should have done the same thing and should have been granted relief, but DHS in Baltimore doesn't communicate with DHS in Philadelphia. DHS doesn't and that immigration judge don't do their own independent research to see if there might be any potential family members that are in the same situation. Petitioner didn't say boo about any of this. There's two links that could get that information to an IJ that otherwise may not have it. Either the counsel for the Petitioner could do so and didn't do so in this case, or the government could do so because the government has availability of getting that information pretty quickly and giving it to the IJ. Don't know if that happened here. Don't know if the counsel necessarily checked, but those would be the two links. When you look at this case, it reminds, we had a former chief judge who was a wonderful person, Judge Edward Becker. And he oftentimes would say in a case like this, haven't you ever heard of the apocryphal case in Ray Rockmonis? Which counsel would look at him and go, what's that? He goes, well, that's Hebrew for mercy. Every now and then, there's something that just says, okay, this is the right thing to do. And why are we standing on so much of procedure, different jurisdictions, supposedly lack of precedent here? This circuit somehow, in your view, is more liberal than others in connection with asylum and withholding of removal in CAD cases. What's your response to that? First, to your point about DHS counsel, I don't know how you think DHS counsel could search records to see if people are siblings. It's not. I don't think that's information readily available to them to search and try. There's no database that links siblings. So putting that aside, I understand the principles of justice and fairness. But doesn't Petitioner have any responsibility for his own justice, his own case? He did not say anything about this. If he thought that his sister's case was so relevant to his, why didn't he bring it up to the agency at any point since he entered with his sister in 2016? He came to the United States with his sister in 2016. Why this is the first we hear about it in 2022 is baffling to me, if it's so integral to his own case. He didn't even put the correct name of his sister's on his asylum application. He listed two other people. I realize that could be a failing of counsel, but he never rectified it. And when he was asked at his merit hearing, why are these other names on your asylum application? Who are these people? I don't know who those are. Counsel, can you tell me why these other names are in your asylum application? I don't know. If he filed a proper ineffective assistance of counsel claim, what would the government do? That's up to DHS and the Board of Immigration. I can't tell them how to adjudicate a motion, but that is the correct remedy in this circumstance to file something with the agency. Here the immigration judge and board, which is the decision before this court, did not commit any error. And it was any inequity is really on petitioner's own shoulders for failing to pursue his claims, for failing to put forth the evidence. And it seems unfair to penalize the government and say that we have to redo this whole thing simply because petitioner didn't put forth the right claims the first time around. All we're trying to do is, in effect, is every now and then you try to do the right thing. And it seems as if if the right thing was what was done in connection with the determination relating to the sisters, and this person's in the same category without doubt as the sisters, what can be done to give that opportunity to the BIA and an immigration judge in this particular case? The thing that can be done is a motion to reopen, and that is the correct procedure to get new evidence and new claims before the agency, who would ultimately have to be the ones that would grant asylum. OK, is there any time? Is there any time that within which you must file a motion to reopen? I can't remember now. Yes, there's a 90-day filing limit. Ninety days from when? The final order, the board's final decision. So we're a few years late here, but the deadline can be equitably told. It's subject to equitable tolling. So he could put forth those claims and explain how he acted with due diligence and why the board should consider these claims at this time. So, I mean, if we asked Mr. Choragrosa to get involved, I still don't I'm not quite certain of what your response is. It seems like you would not because mediation didn't work the last time. You don't see any hope for it working this time either. Again, I was not I was not counsel of record at the time the case went into mediation. So, you know, my information is all secondhand. But from the small amount that I had heard from counsel that preceded me, my understanding was that what petitioner was interested in pursuing as alternative reliefs and what the government was willing to entertain as alternative reliefs were fairly far apart. Did your predecessor in this case bring bring DHS counsel? Into those discussions? I believe petitioner was not interested in having a conversation with DHS at that time. All right. OK. We'll hear from petitioner's counsel. Thank you, Ms. Burns. Thank you, Your Honors. Good morning, Your Honors. Thank you for having me a second time. So you were you counsel before the you were not counsel before the IJ and the BIA in this case or you were? No, I was not. That's what I recall. A different attorney represented the petitioner at the ideal level. And then the case was later picked up by the University of Baltimore Law School. But were they active here? Or my understanding is that the University of Baltimore Law School Clinic had only a small role in this particular case. Can you clarify that for me? Sure. And I believe they they filed the brief. And if I'm not mistaken, they also filed the notice of appeal as well. And there's not a brief before us or before the BIA, before the BIA. And then before us was was was you was me. And as a matter of fact, I was brought in by the University of Law School. They asked me to to help in this case. That's how I came about. OK. The problem is we didn't know anything about this case until your rebuttal when you appeared before us, I guess, last November. Wouldn't that be front and center in terms of a possible argument that should have been made to us? Perhaps. When I first of all, they called they called upon me a few days before the deadline to file the petition for review. That's one. And second. So we were in a rush in her to file the petition for review when he was fine. But you mentioned that it rebuttals. So you knew about it. As a matter of fact, we only knew about it a few days. As a matter of fact, after we filed the brief with the Court of Appeals with this body. And he was perhaps, I would say, a week or so before the oral argument that I had a chance to speak with Miss Gomez and Miss Keys. Are these the sisters? No, the these ladies were the immigration clinic director and assistant director. That's when I found out for the first time that the sisters were also in proceeding before Judge Mahassa in Baltimore Immigration Court. Just like counsel mentioned, I was never told that the sisters were even in proceeding before the immigration court. So that information came to me late during the proceedings. But before oral argument, you knew about it. It would seem that that would call for a 28 J letter informing us that there's a new development that wasn't in the briefs. And that is that with identical. Particular social groups had it had it been argued. Before the IJ here. The two sisters were granted asylum. Perhaps we I came upon that information about perhaps a week or so before this oral argument. But I had already raised not the sisters issue, but I had already raised the family membership issue in my brief before this body. And I thought from the beginning and that was the proper particular social group in this case. You say you say that was noted in your brief. I can't recall. Yes, I did. That is and that is this. That's the battle. I am heading with the government because the government said that should have been raised at the IJ level and the BIA level. And I raised that in my brief. And that is my principle argument. And and also to point to point out to to the to the government record in the record. The government file on January 10th of this year, the supplement that was filed and in the administrative record in the self-proclaimed dicta. And I believe it's 75, no two. And the the IJ himself stated that this was probably the proper PSG in this case. But is in again in the government record stated that I did not conduct an in-depth analysis of the family membership case. And that's where I have a little bit of issue with it, because, you know, under, you know, a U.S.C. 1229. If you want the duty to develop the record. Yes. You know, granted, the council should have raised that particular social group. I don't know what happened. I was not the council and I was not the council before the BIA. So I can't I don't know exactly what was in their mind and what they put forward that particular social group. But it did for me the duty. And that's what I ask in my brief for this court to follow. The Fourth Circuit case in out of Vatican terror versus Garland, because it's a U.S.C. is there for four reasons. One, because if the IJ had conducted a death analysis, I think he would have made a big difference. So that would have made that that no right there. That Victor, I thought, should have put the BIA on notice. IJ raised Lee was eight times. Yes. The prospect of a family PSG invited that to be raised and counsel declined to do it. And the IJ nonetheless went ahead and footnote to and and made the alternative ruling as albeit in dicta. But there wasn't a nexus because there wasn't documentation in the record that would have established this anyway. Again, not having been raised previously as the relevant PSG by counsel and the record not having been fleshed out with the same material. That was clearly available within the Fourth Circuit and the sisters proceedings not being put in the record here by counsel. So pointing to the IJ as not having fully developed the record seems a little problematic, doesn't it? It is. This is because the duty to develop the record, your Honor. Yes. Granted, what counsel did is really shared between the respondent, the petitioner in this case and the immigration judge. That's what a USC 1229 AB says. It's shared between the two. And in this case, you know, a similar issue was was in controversy in in in in in Inez versus Fisher. A good case on that circuit where they really talked about that. It is the duty to a certain effects of the case is really shared between the parties. So I'm not sure of counsel level of experience. I have no clue. I've not done any research on that. But, you know, having raised that, you know, several times, I thought, you know, the IJ should have conducted an in-depth analysis of the case. And yes, the IJ said, oh, maybe even if it was a membership case, I would have denied a nexus. But it would it would be hard for the IJ to raise that to to to conclude that if the IJ had not done an in-depth analysis of the case of the issues. So it was it's hard to make that leap, that conclusion. Because, as Mr. Burns indicated, there has not been a motion to reopen filed even since the argument in this case months back. Why hasn't one been filed, particularly given the ticking clock? I mean, equitable tolling, given discovery of ineffective assistance and and newfound discovery of some of these facts, perhaps would be persuasive to the IJ, maybe even with the consent of DHS. But now we've had intervening months pass with that information before you and no motion to reopen filed. Why is that? It is it is always a difficult question, Your Honor, to to to bring a Lozada claim to bring ineffective assistance for counsel. I guess two separate, I would say it's separate individual and entity, which is the Universal Baltimore Law School Immigration Clinic. I'm sorry you say an entity, but I don't see in the record a brief from anyone except Mr. Cabrera. I believe from what the the Universal Baltimore told me, they were involved in in assisting with the litigation at the BIA level. Again, I was not aware of any of those the previous controversy litigation below. And they called upon me perhaps 10 or 15 days or so before the deadline to file the petition for review. So but I know the Universal Baltimore told me they were involved at the BIA level. I'm not sure what was that level, but they were involved. They are the one who called me. So, you know, we is there a possibility? Yes. But it's it's hard based on the record and on the type of evidence collected from the responder from the petition in this case. Was ineffective assistance of counsel warranted in this case? Further research has to be done for me to to conclude that. But I know for sure I would not have picked that particular social group were I the counsel in this case. I hear you speaking to the awkwardness of raising a Lazada claim, but when you've taken on a representation, your your duty is that of zealous advocacy for the client. Yes. Regardless of opportunities that may create for prior counsel. Right. That is correct, Your Honor. But it's always a difficult question, even though you have a duty to do so. It is it is always a difficult question to do so, because when you are counsel, you come the last minute and you are not present, you know, during the first and the second part. So it's really hard to go after someone for ineffective assistance of counsel because you could different party could share the different blame for what happened for where we are today. The two sisters were represented by the University of Maryland Clinic, is that correct? I believe so. I believe I believe they were. And the you're saying that your client. That was also represented here by the University of Maryland Clinic, is that correct? I'm sorry. Before the BIA and the IJ. I'm not I'm not sure if they were on record, but according to what they told me, they assisted in the representation of at the BIA level of who was the counsel that was of record. I am not sure, but I know I was. Miss Elizabeth Keys from the University of Baltimore was very involved in the litigation at the BIA level. OK. Thank you. Ms. Burns, briefly, as you have indicated, you were not involved in the mediation here and can't speak to precisely what happened in those communications. Would it be worthwhile at this point with your involvement to return to mediation, perhaps in consultation with the supervisor? Your honors, again, I don't know if you're going to have a different desire, a different outcome at this point in terms of potentially prosecutorial discretion or something like that. I don't think at this point the government would agree to a voluntary remand, given all the concerns that we laid out before. But, you know, if if something like prosecutorial discretion or an opportunity to discuss joining in a motion to reopen with the DHS, you know, asking him having petitioner pursue a joint motion to reopen with DHS is something that petitioners potentially interested in. You can certainly explore that. However, this court's adjudication of the final order of removal in this case doesn't preclude him from seeking DHS's consent on a motion to reopen or for him approaching DHS about any sort of prosecutorial discretion. The court could still affirm the final order of removal and he could pursue those prosecutorial discretion type remedies with DHS, despite having a final order affirmed by this court. That may be, but we have the resources of an excellent mediator who works within the court and is available to the parties. So is that something with your involvement that we should do as a referral at this point in time? It's hard for me to say. I mean, I can't speak to whether petitioner's positions changed since the parties last tried mediation, you know, a year ago. I will say that at least the government's position is that, again, we would not at this point agree to a voluntary remand of the case. And so it would, you know, the only remedy would be some sort of approach with DHS, which, again, I don't think it's necessary to do because he's not precluded from doing that. However, you know, I mean, the government is going to refuse to participate in mediation if that's something that the court wishes us to try to do. We can certainly explore that as an option, but it would depend on where, you know, more on whether petitioner's position has changed. I also, you know, the same concerns that go into untimely motion to reopen also go into concerns about prosecutorial discretion the longer that, I guess, the less diligent an applicant is in pursuing these different remedies, I think, sometimes can weigh negatively. But, again, any sort of prosecutorial discretion decisions are ultimately up to DHS. And I think the only kind of remedy that we could maybe agree to would be to hold proceedings while petitioner on his own, you know, works with DHS to see if there is an alternative remedy. But if that's not something he's interested in, then I don't see any benefit of mediation. Well, fortunately, we have counsel present. So as that's been raised by Ms. Burns, can you address whether if and this is simply hypothetical, but were the government open to at least discussing the notion of a joint motion to reopen? Were you to file one? Would you be asking the court for mediation for that purpose today? As a matter of fact, from the beginning, Your Honor, we were always interested in mediation. And as a matter of fact, I was always involved from the beginning. I have never played hardball because I know I came into the situation and we never discussed a joint motion to reopen or a motion to reopen based on ineffective assistance of counsel or an opposing motion. I was never. Ms. Burns was not, but I was always involved. And to be honest, the first mediation lasted very few minutes. It was not productive because, again, Ms. Burns was not involved. And absolutely, I'm always interested in anything for the benefit of the client. I just want to interject to make clear what DOJ's role in this would be. It would simply be to hold proceedings in abeyance while petitioner would pursue this with DHS on its own. We can't really tell DHS how to handle these cases. It would be between him and DHS counsel to pursue a motion to reopen. Well, DOJ and our mediator, of course, could also reach out to DHS for participation in any mediation, right? I mean, I don't know what the limitations are. If DHS wasn't a party to the proceedings, are they permitted to participate in a mediation? Well, you're telling us you don't have authority. You could only go so far in trying to conduct those discussions toward a resolution within mediation. So for the government to effectively do that, if it needs to invite other counsel into the discussions, so be it. As that request is being made, as I understand it, by petitioner's counsel for this case to resume mediation with Ms. Burns participating. Do I understand that correctly?  We will refer to mediation for further discussions between petitioner and Ms. Burns and any other government counsel necessary for meaningful participation in mediation. That would be great. Thank you. We would also like to have a transcript of today's hearing and would ask that that be prepared and at the government's expense. We arrange that, Ms. Burns. You want a transcript of today's proceedings prepared at the government's expense? Yes.